UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

SANDRA SCANNI,

                                                    Plaintiff,

        -against-

NEW YORK LIFE INSURANCE AND ANNUITY
COMPANY,

                                                    Defendant.

----------------------------------------------------------------------X

FILED
CLERK

2:06 pm, Mar 30, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**
21-CV-00180 (JMA) (ARL)

**AZRACK, United States District Judge:**

Plaintiff Sandra Scanni brings this action against Defendant New York Life Insurance and Annuity Company ("NYLIAC") arising from Defendant's termination of her employment as an insurance salesperson. Plaintiff asserts fourteen claims against Defendant: (1) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); (2) violation of her due process and equal protection rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 ("Section 1983"); (3) civil rights conspiracy pursuant to 42 U.S.C. § 1985 ("Section 1985"); (4) failure to prevent interference with her civil rights pursuant to 42 U.S.C. § 1986 ("Section 1986"); (5) discrimination and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); (6) breach of contract; (7) breach of the covenant of good faith and fair dealing; (8) tortious interference with economic advantage; (9) breach of fiduciary duty; (10) unjust enrichment; (11) quantum meruit; (12) conversion; (13) defamation per quod; and (14) defamation per se.

Currently before the Court is Defendant's partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 25.) For the reasons set forth below, the motion is GRANTED.

# I. BACKGROUND

**A.**  **Facts**[1]

Plaintiff was employed by Defendant as an insurance salesperson from 2013 until 2019, when she was "forced to resign in lieu of termination."[2] (Compl. ¶¶ 2–3, 8, 91, 169, ECF No. 1.) Upon joining NYLIAC, Plaintiff "came out of the gate running," receiving several awards for her sales prowess, and was often one of the Defendant's top annual producers. (Id. ¶¶ 5–12.) However, "[d]espite these accolades and achievements, NYL[IAC] treated Scanni differently than the other male agents and employees . . . [b]ecause of her gender." (Id. ¶¶ 14, 16.)

Plaintiff alleges that two male colleagues, Don Lippencott and George Diffendale, "showed jealousy, bullying, cheating, stealing, and a host of other unethical business practices." (Compl. ¶ 20.) She describes several instances in which Lippencott and Diffendale improperly claimed large shares of the commissions that she generated from her clients' accounts. (Id. ¶¶ 25–35.) For example, in 2015, Plaintiff brought in a large account which she refers to as "P Inc." (Id. ¶ 40.) Although a P Inc. executive requested that only Plaintiff manage the account, and despite Defendant's policy that "that the client has the right to decide who manages their account,"

---

[1]     The facts set forth in this section are taken from the complaint and are presumed true for the purposes of this motion, with all reasonable inferences drawn in Plaintiff's favor. Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir. 2012) (citation omitted).

[2]     Defendant contends that Plaintiff was an independent contractor, not its employee, and presents an "Agent Contract" that purportedly governed the parties' relationship. (Def.'s Mem. at 3 n.5, ECF No. 25-1; Hurd Decl., Ex. A, ECF No. 25-6.) The Court has not considered the Agent Contract in resolving Defendant's motion because Plaintiff alleges that the Agent Contract was not the operative agreement in place at the time of her termination. (Compl. ¶ 199.) See United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021) ("[E]ven if a document is integral to the complaint, . . . it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal citations and quotation marks omitted), cert. denied, 142 S. Ct. 2679 (2022).

Plaintiff was "forced" to share "26% of this account" with Lippencott and Diffendale. (Id. ¶¶ 46–47.) In May 2017, Diffendale called one of Plaintiff's top clients, Tom Troike, and told Troike that Plaintiff "was stealing accounts and commissions." (Id. ¶¶ 49–50.) Plaintiff reported the incident to Pauline Healy[3], but Healy took no action in response. (Id. ¶¶ 18, 52.) Troike subsequently ceased doing business with Plaintiff and Defendant. (Id. ¶¶ 51–53.) Following continued "harassment" by Diffendale, Plaintiff "overrode Healy[,] knowing she would do nothing," and reported Diffendale's actions to managing partner John Curry. (Id. ¶ 58.) Curry called Diffendale "and said [Diffendale] was out of line and to stop his behavior." (Id. ¶ 59.) When Healy was informed of Plaintiff's complaint to Curry, however, she merely stated that Lippencott "isn't as bad as" Diffendale. (Id. ¶ 60.) Lippencott's and Diffendale's behavior, which also included "having their associates defame [Plaintiff]," continued "from Lippencott's office" until 2018. (Id. ¶ 61.)

Plaintiff alleges that after lodging complaints with Healy "about male agents and employees, such as Lippencott and Diffendale," which included reports of "discriminatory and retaliatory conduct," she was "retaliated against by Lippencott, Diffendale and others, all at NYL[IAC]'s consent[.]" (Compl. ¶ 84.)

On October 9, 2019, Plaintiff was given termination papers and was told that she was being terminated because a client complained that she had forged the client's signature. (Compl. ¶ 91.) However, Plaintiff alleges that the client complaint was based on "a completely false statement with false information and same was proven false by the regulatory agency charged with investigating the claim, to wit, [the Financial Industry Regulatory Authority ("FINRA")]." (Id. ¶

---

[3]     Plaintiff variously refers to Healy as "New York Life's Director of Compliance," her "direct supervisor," and "Human Resources." (Compl. ¶¶ 18, 84.)

101.)  In fact, Defendant "knew the forgery allegation was false," but instead used it "as a pretext to force [Plaintiff] to resign or be terminated."  (Id. ¶ 102.)  Upon Plaintiff's termination, Defendant confiscated her "earned residuals, income earned, her preferred shares that could be worth several hundred thousand at retirement but are now worthless[,] and the buyout value by NYL[IAC] was $6,000 due to her forced resignation [sic]."  (Id. ¶ 125.)  In January 2020, Diffendale "sent false text messages to individuals who do business" with Plaintiff, "claiming that she was fired for 'shady stuff, a lot of complaints and some suitability issues.'"  (Compl. ¶¶ 86–87.)  Plaintiff believes that these actions "were taken in retaliation for her complaints to HR and to having filed [sic] an EEOC complaint."  (Id. ¶ 88.)

Plaintiff also claims that Defendant treated her less well than her male colleagues by terminating her.  For example, she alleges that several of her male coworkers have "engaged in much worse actions" than she, yet they remain employed by Defendant. (Compl. ¶¶ 122–23.)  She also alleges that "all men," including Lippencott and Diffendale, "engage in fraud" by falsely recording agent commissions.  (Id. ¶¶ 228–33.)  Despite this "obvious fraud," Lippencott, Diffendale, and unnamed "male partners" remain employed by Defendant, while Defendant "terminated [her] due to a false letter written by an advisor seeking to poach [the client]'s business."  (Id. ¶ 233, 236.)

## B.    Procedural History

Plaintiff received a right-to-sue letter from the United States Equal Employment Opportunity Commission on October 21, 2020, and she commenced this action on January 13, 2021.  (ECF Nos. 1, 1-1.)  After Defendant filed a letter requesting a pre-motion conference regarding its anticipated partial motion to dismiss under Rule 12(b)(6), (ECF No. 16), which Plaintiff opposed, (ECF No. 17), the Court directed the parties to proceed with discovery before

4

Magistrate Judge Lindsay and granted Plaintiff leave to file an amended complaint by July 14, 2021.  (Electronic Order dated June 23, 2021.)  Plaintiff did not amend her complaint, so on July 14, 2021, Defendant filed an answer to the complaint and served its motion on Plaintiff.  (ECF Nos. 20, 25.)  The parties subsequently tried, but failed, to resolve the case through private mediation.  (ECF Nos. 21, 25-7.)  As a result, they proceeded to brief Defendant's motion, which was ultimately filed on May 18, 2022.

## II.    LEGAL STANDARD

To survive a motion brought under Rule 12(b)(6),[4] "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  A court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party.  Forest Park Pictures, 683 F.3d at 429 (citation omitted).  Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S.

---

[4]    Defendant moves for partial dismissal primarily under Rule 12(b)(6).  However, because Defendant "also filed an Answer simultaneously in an abundance of caution," it moves in the alternative for judgment on the pleadings under Rule 12(c).  (Def.'s Mem. at 2 n.2.)  The Court construes Defendant's motion as being made under Rule 12(b)(6) and deems it timely.  See Hosain-Bhuiyan v. Barr Lab'ys, Inc., No. 17-CV-114, 2017 WL 4122621, at *2 (S.D.N.Y. Sept. 14, 2017) ("Where, as here, a defendant files a motion to dismiss simultaneously with an answer, the asserted bases for dismissal are not waived.") (citing Beary v. W. Publ'g Co., 763 F.2d 66, 68 (2d Cir. 1985) ("Although [Rule] 12(b) encourages the responsive pleader to file a motion to dismiss before pleading, nothing in the rule prohibits the filing of a motion to dismiss with an answer.")).  In any event, whether the motion is reviewed under Rule 12(b)(6) or Rule 12(c), the "same standard" applies.  Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 305 (2d Cir. 2021) (citation omitted).

at 555).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Ultimately, if the plaintiff's allegations "have not nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  Twombly, 550 U.S. at 570.

## III.  DISCUSSION

Defendant moves to dismiss the following claims:  (1) Section 1983 (Count II); (2) Section 1985 (Count III); (3) Section 1986 (Count IV); (4) breach of contract (Count VI); (5) breach of the covenant of good faith and fair dealing (Count VII); (6) tortious interference with economic advantage (Count VIII); (7) breach of fiduciary duty (Count IX); (8) unjust enrichment (Count X); (9) quantum meruit (Count XI); (10) conversion (Count XII); and (11) defamation (Counts XIII and XIV).  (Def.'s Mem. at 1, ECF No. 25-1.)  Defendant does not seek to dismiss Plaintiff's claims under Title VII (Count I) or the NYSHRL (Count V).

Plaintiff opposes Defendant's motion, except that she withdraws her Section 1985, 1986, and defamation claims.  (Pl.'s Opp'n at 18, ECF No. 25-7.)  Those claims are thus dismissed, and for the reasons set forth below, Defendant's motion is granted as to the other claims.

## A.  Section 1983 Claim

Plaintiff's Section 1983 claim is predicated on Defendant's "conduct designed to deprive [her] of her rights under Title VII, as well as her Due Process Rights under the 14th Amendment by engaging in retaliatory conduct designed to inhibit and deprive [her] of the full use and benefit of her certifications allowing her to serve as an agent within the State."  (Compl. ¶ 248.)  She also alleges that Defendant's "acts of discrimination, retaliation, and hostile work environment . . . violated [her] equal protection rights" and "constitute a stigma-plus claim violating [her] liberty interests" under the Fourteenth Amendment.  (Id. ¶¶ 249–50.)

To support a Section 1983 claim, the "the conduct at issue must have been committed by a person acting under color of state law." DuBois v. Bedford-Flatbush Chiropractic, P.C., 409 F. Supp. 3d 62, 69 (E.D.N.Y. 2019) (quoting Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)).  In order to demonstrate that a private entity was acting under color of state law, a plaintiff must establish that one or more of the following circumstances applies:  (i) "when the private entity performs a traditional, exclusive public function;" (ii) "when the government compels the private entity to take a particular action;" or (iii) "when the government acts jointly with the private entity." Lurch v. City of New York, No. 19-CV-11253, 2021 WL 1226927, at *3 (S.D.N.Y. Mar. 31, 2021) (quoting Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019)); see also Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 313 (2d Cir. 2003) (explaining that state action can be found in limited circumstances, such as where the state has compelled the conduct by "significant encouragement," when the private actor is exercising a "public function," or where the private actor's conduct is "entwined" with a government function) (citations omitted).

Here, Plaintiff argues that Defendant's conduct is attributable to the state because "it is undisputed that NYLIAC is a heavily regulated business operating in the State of New York under the specific auspices of the New York State Insurance Law."  (Pl.'s Opp'n at 4; see also id. at 5–6 (citing N.Y. Ins. Law §§ 1102, 2103).)  But the "mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment," even when "the regulation is extensive and detailed." Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974).  Courts have consistently rejected similar conclusory allegations regarding purported state action by private entities.  See Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996) ("Extensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor[.]"); Limtung v. Consol. Edison of New York, No. 19-CV-5444,

2021 WL 1254447, at *2 (E.D.N.Y. Apr. 5, 2021) (dismissing Section 1983 claim against utility company predicated on allegation that company "has a quasi public function and is licensed to and does act as an agent of the State of New York," and explaining that "this legal theory has been explicitly rejected by the Supreme Court and the Second Circuit") (citing Jackson, 419 U.S. at 350–51, 358; Taylor v. Consolidated Edison Co. of New York, Inc., 552 F.2d 39, 44–45 (2d Cir. 1977)); Lurch, 2021 WL 1226927, at *3 (rejecting argument that hotel defendant had acted under color of state law merely because it "is subject to governmental regulation and governmental bodies allow it to operate"); Tufano v. One Toms Point Lane Corp., 64 F. Supp. 2d 119, 128 (E.D.N.Y. 1999) (rejecting Section 1983 claim where "the only plausible nexus" was that defendant was "incorporated under the laws of New York State"), aff'd, 229 F.3d 1136 (2d Cir. 2000); Ponticelli v. Zurich Am. Ins. Grp., 16 F. Supp. 2d 414, 426 (S.D.N.Y. 1998) ("[Defendant] cannot be deemed to be acting under color of state law by virtue of the fact that it is licensed to conduct business in New York.") (citations omitted).

Once the Court sets aside Plaintiff's conclusory allegation that state regulation of the insurance industry transforms Defendant into a state actor, her Section 1983 claim is left wanting. She nowhere alleges that Defendant was "perform[ing] a traditional, exclusive public function," that the state "compel[led] [Defendant] to take a particular action," or that "the government act[ed] jointly with [Defendant]." Lurch, 2021 WL 1226927, at *3 (quoting Halleck, 139 S. Ct. at 1928). Thus, the Court finds that Plaintiff "fail[s] to allege facts that, if established, would show that [Defendant's conduct] was fairly attributable to the state." Tancredi, 316 F.3d at 313. Because Plaintiff cannot maintain a Section 1983 claim absent plausible allegations that Defendant was acting under color of state law, this claim is dismissed.

B.  **Breach of Contract**

Plaintiff claims that Defendant breached the parties' employment contract.  Specifically, she alleges that Defendant "is in a contractual relationship with [her] or, at a minimum, an at-will employment relationship," that Defendant "breached that contract because it terminated its relationship with [her] for sexually discriminatory and retaliatory reasons," and that Defendant did so "in order to prevent her from receiving her compensation as a soliciting agent under the contract."  (Compl. ¶¶ 265–66, 268.)

Plaintiff's breach of contract claim fails for a simple reason:  she does not allege which contract—let alone which specific contractual provision—Defendant breached.  Under New York law, "[a] breach of contract claim will be dismissed . . . as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." Timberg v. Toombs, No. 20-CV-6060, 2022 WL 954739, at *10 (E.D.N.Y. Mar. 30, 2022) (quoting Negrete v. Citibank, N.A., 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016)); see also Manes v. JPMorgan Chase Bank, N.A., No. 20-CV-11059, 2022 WL 671631, at *7 (S.D.N.Y. Mar. 7, 2022) (dismissing breach of contract claim where plaintiff "failed entirely to identify the specific contract term or terms that [defendant] allegedly breached"); Quintanilla v. WW Int'l, Inc., 541 F. Supp. 3d 331, 350 (S.D.N.Y. 2021) ("To plausibly allege a breach of contract, a plaintiff must identify 'the specific provisions of the contract upon which liability is predicated.'") (quoting Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P., 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017)); McGrath v. Arroyo, No. 17-CV-1461, 2019 WL 3754459, at *16 (E.D.N.Y. Aug. 8, 2019) (a plaintiff pleading a breach of contract claim must "identify, in non-conclusory fashion, the specific terms of the contract that a Defendant has breached") (quoting Spinelli v.

9

Nat'l Football League, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015)); Gianelli v. RE/MAX of New York, Inc., 41 N.Y.S.3d 273, 274 (2d Dep't 2016) ("A breach of contract cause of action fails as a matter of law in the absence of any showing that a specific provision of the contract was breached.") (citations omitted).

Even in her opposition brief—with the benefit of the arguments raised in Defendant's motion to dismiss—Plaintiff still fails to identify, in non-conclusory fashion, the specific terms of any contract that Defendant breached. She contends that "[t]hroughout the Complaint, NYLIAC's violations of [her] contractual rights are explained," (Pl.'s Opp'n at 7), and proceeds to cite various allegations from the complaint regarding Defendant's conduct. (Id.) However, despite her repeated, conclusory statements that these actions reflect a "breach of the employment contract," she nowhere "identif[ies] any specific term" in any contract which "even potentially obliged" Defendant to refrain from such conduct. Quintanilla, 541 F. Supp. 3d at 350. As a result, she has failed to adequately plead her breach of contract claim.

In a last-ditch effort to stave off dismissal, Plaintiff argues that "the breach of contract claim should be allowed to go forward so discovery can be had to further flesh out the applicable agreements and breaches." (Pl.'s Opp'n at 11.) This contention is meritless. As Defendant points out, "it is axiomatic that a plaintiff must state a claim before [s]he is entitled to discovery." (Def.'s Reply at 4 (quoting Haynes v. City of New York, No. 19-CV-1925, 2020 WL 4926178, at *18 (S.D.N.Y. Aug. 20, 2020).) And in any event, Plaintiff provides no reason why she—as the counterparty to the purported contract with Defendant—requires discovery to "flesh out the applicable agreements and breaches."

10

1

For these reasons, Plaintiff's breach of contract claim is dismissed.[5]

**C.      Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff also claims that Defendant breached the implied covenant of good faith and fair dealing.

Under New York law, "implicit in every contract is a covenant of good faith and fair dealing[,] which encompasses any promises that a reasonable promisee would understand to be included." Ally Fin. Inc. v. Comfort Auto Grp. NY LLC, No. 20-CV-1281, 2021 WL 4033249, at *7 (E.D.N.Y. Sept. 3, 2021) (quoting Spinelli v. Nat'l Football League, 903 F.3d 185, 205 (2d Cir. 2018)).   However, because "breach of that duty is merely a breach of the underlying contract," New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) (quoting Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002)).   As a result, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." Id. (citing L–7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 434 n. 17 (2d Cir. 2011)).   Additionally, a claim for breach of the implied covenant must be dismissed when it "is intrinsically tied to the damages allegedly resulting from a breach of the contract." Quintanilla, 541 F. Supp. 3d at 353 (quoting Deer Park Enters., LLC v. Ail Sys., Inc., 870 N.Y.S.2d 89, 90 (2d Dep't 2008)).

---

[5]      As a result, the Court need not consider Defendant's additional arguments that (1) the breach of contract claim "is foreclosed by the plain terms of the Agent Contract," (2) Plaintiff cannot bring a breach of contract claim as an at-will employee, and (3) the breach of contract claim "simply rehashes her discrimination claims and does not state an independent claim."   (Def.'s Mem. at 8–9.)

The Court agrees with Defendant that Plaintiff's breach of implied covenant claim is duplicative of her breach of contract claim.   First, Plaintiff does not respond to Defendant's argument that her breach of implied covenant claim is duplicative.   Her failure to address this crucial flaw alone warrants dismissal.   See Quintanilla, 541 F. Supp. 3d at 352 ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.") (citation omitted). Instead, she asserts that "since there is a dispute as to whether there is a contract between the Plaintiff and the Defendant, the implied covenant of good faith and fair dealing [claim] must stand."   (Pl.'s Opp'n at 12.)   This argument misses the mark.   Defendant does not dispute the existence of a valid contract—as discussed above, it simply argues that Plaintiff has not identified any specific contractual term that it breached.[6]   (Def.'s Mem. 7–8; Def.'s Reply at 6 n.3.)

Second, as Plaintiff herself makes clear, "the same facts support both claims."   Ally Fin., 2021 WL 4033249, at *7.   Plaintiff alleges that Defendant breached the implied covenant by "falsely terminat[ing] [her] employment and abscond[ing] with her clients, customers, book of business[,] as well as her residuals and commissions[.]"   (Pl.'s Opp'n at 12; see also Compl. ¶ 274.)   She also alleges that Defendant breached the parties' contract by "forc[ing] [her] to resign in lieu of termination," taking her "earned residuals, income earned, [and] preferred shares," as well as "her clients, . . . and book of business."   (Pl.'s Opp'n at 7 (quoting Compl. ¶ 169).)   Thus, it is readily apparent that her breach of implied covenant claim is also "intrinsically tied to the

---

[6]      Plaintiff's reliance on Gravier Prods., Inc. v. Amazon Content Servs., LLC, No. 19-CV-1169, 2019 WL 3456633 (S.D.N.Y. July 31, 2019), (Pl.'s Opp'n at 11–12), is similarly misplaced. There, as here, the court dismissed the implied covenant claims because "[t]he parties d[id] not dispute the validity of [relevant agreements] and the plaintiffs d[id] not identify any disagreement over the meaning of terms in those contracts that could render their implied covenant claims non-duplicative." Id. at *5.

damages allegedly resulting from a breach of the contract." Quintanilla, 541 F. Supp. 3d at 353 (citation omitted).

Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed as duplicative of her breach of contract claim.

**D.  Tortious Interference with Economic Advantage**

Plaintiff also brings a claim for tortious interference with economic advantage, based on Defendant's "intentional[] disrupt[ion] and terminat[ion]" of Plaintiff's "business relationships" with "high[-]net[-]worth individuals," its "sabotage[]" of her clients, and its "interfere[nce] with her relationships with her former agents." (Compl. ¶¶ 277–82.) She also alleges that Defendant interfered with her relationships with her clients Tom Troike and P Inc., and that her coworker, George Diffendale, "sent libelous text messages about [her] to clients, former clients[,] and friends and neighbors[.]" (Id. ¶¶ 40–47, 49–53, 86.)

Defendant argues that Plaintiff's allegations regarding Troike and P Inc. are time-barred. (Def.'s Reply at 6–7.) The statute of limitations for tortious interference claims is three years, see N.Y. C.P.L.R. § 214(4), and "begins to run when the defendant performs the action (or inaction) that constitutes the alleged interference." Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 206 F. Supp. 3d 869, 910 (S.D.N.Y. 2016) (quoting Thome v. Alexander & Louisa Calder Found., 890 N.Y.S.2d 16, 30 (1st Dep't 2009)); see also Piccolo v. Singleton, 18-CV-1324, 2019 WL 4261735 at *5 (E.D.N.Y. Sept. 9, 2019). Accordingly, "[e]ven where . . . the claim is based entirely on the assertion that the defendants' action (or inaction) had a negative effect on contractual relationships that plaintiff might later have had, the subsequent injuries alleged do not affect the timeliness issue." Gym Door Repairs, 206 F. Supp. 3d at 910 (quoting Thome, 890 N.Y.S.2d at 30). Here, the alleged incident regarding P Inc. appears to have occurred in 2015, (Compl. ¶ 40–

47), and Plaintiff's allegations regarding Troike stem from events that took place in May 2017 (id. ¶¶ 49–53). Thus, the limitations periods for these allegations expired in 2018 and 2020, respectively. Because Plaintiff did not commence this action until 2021, her allegations regarding P Inc. and Troike are time-barred and cannot support her tortious interference claim.

Setting aside the time-barred allegations, the Court is left with only Plaintiff's vague allegations that Defendant interfered with her "business relationships" with "high[-]net[-]worth individuals," "individuals who do business with [her]," "potential clients and employers," "clients and customers," "former agents," and "former clients and friends and neighbors[.]" (Compl. ¶¶ 86–89, 277–82.) The Court agrees with Defendant that these allegations are insufficient to state a tortious interference claim. (Def.'s Mem. at 11.)

To survive a motion to dismiss, a plaintiff must "adequately allege <u>specific</u> business relationships with which Defendant allegedly interfered." <u>Mumin v. Uber Techs., Inc.</u>, 239 F. Supp. 3d 507, 535 (E.D.N.Y. 2017) (citation omitted). A court may only consider "alleged interference with <u>existing</u> relationships, as opposed to [p]laintiffs' <u>hypothetical</u> relationships with future [customers.]" <u>Id.</u> (internal quotation marks and citation omitted; emphases added). As a result, courts routinely dismiss tortious interference claims where plaintiffs fail to identify the specific, existing business relationships with which defendants allegedly interfered. <u>See Camelot SI, LLC v. ThreeSixty Brands Grp. LLC</u>, No. 21-CV-8232, 2022 WL 4628757, at *9 (S.D.N.Y. Sept. 30, 2022) (dismissing tortious interference claim because plaintiff "fail[ed] to identify any concrete relationship with a particular consumer"); <u>Babbitt v. Koeppel Nissan, Inc.</u>, No. 18-CV-5242, 2020 WL 3183895, at *7 (E.D.N.Y. June 15, 2020) (dismissing tortious interference claim where plaintiff "d[id] not identify specific business relationships with which [defendant] allegedly interfered, other than references to unnamed financial lending institutions"); <u>Mumin</u>, 239 F. Supp.

14

3d at 535 (dismissing tortious interference claim against Uber where driver plaintiffs merely alleged interference with their "riders" and "customers").  Under this standard, Plaintiff's failure to identify any specific business relationships with which Defendant allegedly interfered—other than generalized references to "business relationships" and "clients"—is fatal to her tortious interference claim.  Accordingly, this claim is dismissed.

### E.   **Breach of Fiduciary Duty**

Defendant argues that Plaintiff's breach of fiduciary duty claim must be dismissed because Plaintiff "fails to plead any fiduciary duty owed by NYLIAC to her," and the claim merely duplicates her breach of contract claim.  (Def.'s Mem. at 11.)

To state a breach of fiduciary duty claim under New York law, a plaintiff must adequately allege:  "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  Childers v. New York and Presbyt. Hosp., 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011)).  A fiduciary relationship exists "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  Spinelli, 903 F.3d at 207 (quoting Flickinger v. Harold C. Brown & Co., Inc., 947 F.2d 595, 599 (2d Cir. 1991); see also Fed. Ins. Co. v. Int'l Bus. Machs. Corp., 18 N.Y.3d 642, 649 (2012) ("[A] fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.") (alteration, internal quotation marks, and citation omitted).

Plaintiff contends that she has adequately alleged the existence of a fiduciary relationship in light of "the statutory role, in New York, that insurance companies must exercise over its [sic] agents and employees."  (Pl.'s Opp'n at 16.)  She also cites Defendant's conduct in "limiting,

reviewing and offering what insurance products she could sell as [Defendant] had final say on suitability," and Defendant's "fiduciary responsibility of ascertaining the suitability of the products [Plaintiff's client] was being offered." (Id.) The Court finds that Plaintiff has not plausibly alleged the existence of a fiduciary duty.

First, it is well-settled that "the employer-employee relationship does not, on its own, create a fiduciary relationship." Daniels v. Am. Airlines, No. 19-CV-03110, 2020 WL 9816000, at *25 (E.D.N.Y. Sept. 4, 2020) (citation omitted); see also Wilson v. Dantas, No. 12-CV-3238, 2013 WL 92999, at *1 (S.D.N.Y. Jan. 7, 2013) ("The relationship that [the plaintiff] outlines in his complaint is nothing more than a standard, arm's length prior employment relationship that does not give rise to fiduciary duties.") aff'd, 746 F.3d 530 (2d Cir. 2014); Rather v. CBS Corp., 886 N.Y.S.2d 121, 125 (1st Dep't 2009) ("The law . . . in every reported appellate-division-level case[ ] is that employment relationships do not create fiduciary relationships. Simply put, the employer did not owe plaintiff, as employee, a fiduciary duty.") (alteration and internal quotation marks omitted) (collecting cases)). The same is true for at-will employment relationships. See Budet v. Tiffany & Co., 547 N.Y.S.2d 81, 82 (2d Dep't 1989) ("[A]n employer owes an employee at will no fiduciary duty.") (citation omitted). Therefore, Scanni cannot rely on the mere allegation that she was Defendant's employee to plausibly allege a fiduciary relationship.

Second, to the extent that Plaintiff argues that Defendant occupied a position of trust in relation to her, her claim is "legally untenable because an employee's 'trust' that his employer will 'treat him fairly' does not create a fiduciary duty on the part of the employer." Bloom v. Rock, No. 06-CV-6301, 2010 WL 2267468, at *10 (S.D.N.Y. May 27, 2010) (quoting Freedman v. Pearlman, 706 N.Y.S.2d 405, 409 (1st Dep't 2000)); see also Childers, 36 F. Supp. 3d at 306 ("[C]ourts routinely have held that conclusory allegations of a special relationship [or] complete

trust and confidence are insufficient to state a claim of a fiduciary duty.") (quoting <u>Abercrombie v. Andrew Coll.</u>, 438 F. Supp. 2d 243, 275 (S.D.N.Y. 2006)).

Third, Plaintiff cites no authority—and the Court has found none—for the expansive proposition that Defendant owed her a fiduciary duty because insurance companies are subject to state regulations.  The Court "is not required to credit mere legal conclusions that are dressed up as factual allegations that a defendant was in a fiduciary relationship with a plaintiff." <u>Childers</u>, 36 F. Supp. 3d at 306 (quoting <u>Faktor v. Yahoo! Inc.</u>, No. 12-CV-5220, 2013 WL 1641180, at *3 (S.D.N.Y. 2013)).

Because Plaintiff has not plausibly alleged that Defendant owed her any fiduciary obligation, her breach of fiduciary duty claim is dismissed.[7]

## F.    Quasi-Contract Claims

Plaintiff also brings two quasi-contract claims:  one for unjust enrichment and one for quantum meruit.

To state a claim for unjust enrichment under New York law, a plaintiff must establish that "(1) 'defendant was enriched'; (2) 'at plaintiff's expense'; and (3) 'equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" <u>Quintanilla</u>, 541 F. Supp. 3d at 353 (quoting <u>Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.</u>, 373 F.3d 296, 306 (2d Cir. 2004).  In order to recover in quantum meruit under New York law, "a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host</u>

---

[7]    As a result, the Court need not consider Defendant's argument that the breach of fiduciary duty claim is duplicative of her breach of contract claim.  (Def.'s Mem. at 11.)

Corp., 418 F.3d 168, 175 (2d Cir. 2005) (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000)). These claims "may be analyzed as a single quasi-contractual claim," so, while their elements are distinct, "for all intents and purposes, the claims are indistinguishable." Shearon v. Comfort Tech Mech. Co., 936 F. Supp. 2d 143, 153 (E.D.N.Y. 2013) (citing Mid-Hudson, 418 F.3d at 175). It is well-settled that "a plaintiff may not recover under quasi-contract claims . . . where an enforceable contract governs the same subject matter." Quintanilla, 541 F. Supp. 3d at 353 (citing Mid-Hudson, 418 F.3d at 175). Thus, although quasi-contract claims "may be plead in the alternative where the plaintiff challenges the validity of the contract; [they] may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract," id. (citation omitted), even where the contract claim fails on the merits. See EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 22–23 (2005) (dismissing breach of contract and quasi-contract claims).

In light of these principles, Plaintiff's quasi-contract claims must be dismissed. First, neither party disputes that the subject matter of this dispute is governed by an enforceable contract—they only disagree over the specific terms of that contract. This is fatal to Plaintiff's claims. See Quintanilla, 541 F. Supp. 3d at 354 (dismissing quasi-contract claims due to "[t]he parties' valid, enforceable contract"). Although Plaintiff argues that "[u]nder the alternate pleading standard, [she] is alleging that if there is found to be no valid contract in place between the parties then these claims must go forward," (Pl.'s Opp'n at 17), neither party is "challeng[ing] the validity of the contract," and therefore she may not rely on alternative pleading to save her quasi-contract claims. Quintanilla, 541 F. Supp. 3d at 353. Finally, Plaintiff does not even dispute that her quasi-contract claims merely duplicate her breach of contract claim, as they are based on the same alleged breaching conduct—her termination and Defendant's failure to pay her compensation. (See Compl. ¶¶ 268, 291, 297.) This, too, warrants dismissal. See Gill v. Nat'l

18

Football League, No. 21-CV-1032, 2021 WL 5087900, at *7 (S.D.N.Y. Nov. 2, 2021) (dismissing unjust enrichment claim because it was "based on the same alleged breaching conduct" as breach of contract claim); In re Columbia Tuition Refund Action, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (explaining that courts "have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship") (collecting cases). Accordingly, Plaintiff's quasi-contract claims are dismissed.

**G.   Conversion**

Finally, Plaintiff brings a claim for conversion.  "To state a claim of conversion, the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." Rynasko v. New York Univ., No. 21-1333, --- F.4th ----, 2023 WL 2604367, at *7 (2d Cir. Mar. 23, 2023) (quoting V&A Collection, LLC v. Guzzini Props. Ltd., 46 F.4th 127, 133 (2d Cir. 2022)).  Importantly, "a claim of conversion under New York law 'cannot be predicated on a mere breach of contract.'" Id. (quoting Jeffers v. Am. Univ. of Antigua, 3 N.Y.S.3d 335, 339 (1st Dep't 2015)); see also Shak v. Adelphi Univ., 549 F. Supp. 3d 267, 275 (E.D.N.Y. 2021).

Plaintiff alleges that she was "entitled" to "certain bonuses and commissions," and that Defendant "intentionally interfered with, or exercised dominion or control over, those payments by withholding them and ultimately keeping them for itself," thus depriving her of possession or use of those funds.  (Compl. ¶¶ 301–03; see also Pl.'s Opp'n at 17–18 (citing Compl. ¶¶ 32–33, 35, 40–47, 58, 72–77, 80–81, 125, 204, 218, 239).)  However, these allegations make clear that Plaintiff's conversion claim is "predicated on a mere breach of contract." Rynasko, 2023 WL

19

2604367, at \*7 (citation omitted).  Indeed, Plaintiff's contention that her conversion claim is distinct from her breach of contract claim is belied by her own opposition brief, which cites the same allegations in support of both claims.  (See Pl.'s Opp'n at 7 (breach of contract), 17–18 (conversion).)  Because Plaintiff's conversion claim is predicated on Defendant's alleged breach of the parties' contract, it is dismissed.

## IV.     LEAVE TO AMEND

Plaintiff seeks leave to file an amended complaint.  (Pl.'s Opp'n at 1.)  Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but it remains "within the sound discretion of the court to grant or deny leave to amend."  Manes, 2022 WL 671631, at \*8 (citing Kim v. Kimm, 884 F.3d 98, 105 (2d Cir. 2018)).  Plaintiff's request is denied.

First, the Court already afforded Plaintiff an opportunity to amend her complaint with the benefit of Defendant's pre-motion letter (ECF No. 16), which laid out the bases for its present motion to dismiss.  (Electronic Order dated June 23, 2021.)  She declined to take advantage of that opportunity to correct the deficiencies identified in her complaint.  She now asserts that she did not amend her complaint because her "efforts were focused on mediation, rather than amending the Complaint."  (Pl.'s Opp'n at 1.)  However, "[i]n general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend."  Dwyer v. Allbirds, Inc., No. 21-CV-5238, 2022 WL 1136799, at \*11 (S.D.N.Y. Apr. 18, 2022) (citing Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 257–58 (2d Cir. 2018)).

Second, Plaintiff's request for leave to amend is deficient because she "has not submitted a proposed amended pleading for review nor stated in [her] brief in opposition to [Defendant]'s motion what facts [s]he could add to satisfy the applicable pleading standard."  Manes, 2022 WL

671631, at *9. "These factors combined are grounds to deny leave to amend." Id. (denying leave to amend breach of contract claim where plaintiff failed to "specify which contractual provision was breached") (citing Rosendale v. Brusie, 374 F. App'x 195, 198 (2d Cir. 2010) ("The numerous opportunities that [Plaintiff] has had to clarify or restate his claims and his failure to do so, in conjunction with his failure to submit a proposed amended pleading, provide a sufficient basis for . . . denying leave to amend.")); see also TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."); Oden v. Bos. Sci. Corp., 330 F. Supp. 3d 877, 904 n.4 (E.D.N.Y. 2018) ("Plaintiff's request to amend, contained solely in his opposition memorandum, is procedurally defective since 'a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15.'") (quoting Koehler v. Metro. Transportation Auth., 214 F. Supp. 3d 171, 178 (E.D.N.Y. 2016)).

Therefore, Plaintiff's request for leave to amend her complaint is denied.

## V.    CONCLUSION

For the reasons stated above, Defendant's partial motion to dismiss is GRANTED. Accordingly, Counts II, III, IV, VI, VII, VIII, IX, X, XI, XII, XIII, and XIV are DISMISSED. Plaintiff's request for leave to file an amended complaint is DENIED.  The parties are directed to proceed with discovery before Magistrate Judge Lindsay.

**SO ORDERED.**
Dated:  March 30, 2023
Central Islip, New York

_____
          /s/   (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE